UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KV PHARMACEUTICAL COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09cv1700 TCM |
| ) | |
| J. URIACH & CIA S.A., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action for breach of contract and misappropriation of trade secrets brought by KV Pharmaceutical Company (Plaintiff), a Delaware corporation with its principal place of business in Missouri, against J. Uriach & CIA, S.A. (Defendant), a Spanish corporation with its principal place of business in Barcelona. Pending is the opposed motion of Defendant to dismiss for lack of personal jurisdiction and forum non conveniens.[1] [Doc. 28]

### Background

Plaintiff alleges in its complaint that it entered into an agreement with Defendant in May 1993 "for the development, manufacture, and sale" of an antifungal cream with an ingredient, Flutrimazole, developed by Defendant and a drug delivery system, Site Release, developed by Plaintiff. (Compl. ¶¶ 7, 12-13.) This agreement provided, among other things, that Plaintiff was "to use its best efforts to develop" the cream for sale by Defendant and Defendant was to maintain the confidentiality of the information furnished by Plaintiff. (Id. ¶¶ 14, 18.) Defendant was also to take the necessary steps to obtain approval from the

---

[1]The case is before the undersigned United States Magistrate Judge by written consent of the parties. See 28 U.S.C. § 636(c).

countries in the European Economic Community (EEC) to manufacture, sell, and distribute in those countries the cream developed by Plaintiff. (Id. ¶ 2.4.) Plaintiff, however, had the "exclusive right to the manufacture, use, and sale" of the cream in the United States, Canada, and Mexico. (Id. ¶ 4.1.) This agreement further provided that it "shall be deemed to have been entered into and shall be governed by and construed under the laws of the State of Missouri . . . ." (Id. ¶ 20. Ex. 1 ¶ 14.1.)

The parties amended this agreement in June 2002, and in 2005 Plaintiff sent Defendant a letter terminating the agreement pursuant to a provision in that amendment. (Id. ¶¶ 21, 23.) Defendant then allegedly failed to return certain trade secrets and information to Plaintiff as required and subsequently began marketing and selling a cream using Plaintiff's Site Release system. (Id. ¶¶ 24-25.) This action followed.

In its pending motion, Defendant argues that this Court lacks personal jurisdiction over it because its only contact with Missouri is its contract with Plaintiff. Defendant additionally argues that the case should be dismissed for forum non conveniens because Spain has a stronger public interest in the outcome of the dispute, which its courts are fully capable of resolving.

In support of its motion, Defendant submits the unrefuted declaration of its officer, Joaquin Uriach, averring that Plaintiff's and Defendant's business relationship began in 1992 when Plaintiff wrote Defendant proposing a marketing partnership in Spain for a product Plaintiff had developed. (Uriach Decl. ¶ 7; Decl. Ex. 1.) Defendant was not interested, and so informed Plaintiff by letter. (Uriach Decl. ¶ 7; Decl. Ex. 2.) In this same letter, Defendant inquired whether it could use Plaintiff's Biosert technology with its Flutrimazole.

(Id.) Flutrimazole, discovered by Defendant in Spain, is the active ingredient in a vaginal anti-fungal cream, Gine Micetal®, sold exclusively in Spain by Defendant. (Uriach Decl. ¶¶ 5, 6.) Plaintiff responded by letter that its scientists believed that Flutrimazole could be incorporated into either its Biosert and Site Release systems, suggested that it provide a development proposal, and noted that the author, Plaintiff's vice-president, would soon be in Europe and would be happy to meet with Defendant. (Uriach Decl. Ex. 3.) Subsequently, in April 1992, Plaintiff's vice-president meet with Defendant's representative in Paris, France. (Uriach Decl. Ex. 5.) In February 1993, two of Plaintiff's representatives, including the vice-president, traveled to Defendant's offices in Barcelona. (Uriach Decl. ¶ 9.) Three months later, they entered into their agreement. (Id. ¶ 10.)

In September 2001, Defendant's representatives met with Plaintiff's representatives at its Missouri facility. (Id. ¶ 14.) Four years later, the parties' agreement was terminated by Plaintiff. (Compl. ¶ 23.)

Mr. Uriach avers that Defendant "has no agent for service of process in Missouri"; does not own, sell, or lease property in Missouri; has no employees, offices, service or other facilities, telephone numbers, bank accounts, or loan applications in Missouri; does no advertising and attends no regular events, including trade shows or other pharmaceutical industry meetings, in Missouri; and does not own any subsidiary or other controlled entity with any of the foregoing contacts. (Uriach Decl. ¶ 4.) Moreover, although Defendant does maintain a website, that website is international only. (Id.) Defendant also has not been a party to any previous litigation in Missouri. (Id.) All its efforts pursuant to the parties' 1993 agreement were performed in Spain. (Id. ¶ 19.)

Plaintiff contends that this Court may exercise personal jurisdiction over Defendant given (a) its more than ten-year relationship with Plaintiff, a Missouri corporation, pursuant to an agreement formed under Missouri law, (b) the parties' intent that "critical activities such as the development of prototypes and the drafting of study protocols . . . be performed in Missouri"; (c) the Missouri location of the scientists and technicians whose knowledge was to be transferred; (d) the Missouri location of "the substantial bulk of all the technical expertise related to the delivery vehicle"; and (e) the commission by Defendant of a tort in Missouri, the harm from the tortious acts having been suffered in Missouri. (Pl. Mem. at 5-6.)

## Discussion

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that [the defendant] can be subjected to jurisdiction within the state." **Dever v. Hentzen Coatings, Inc.**, 380 F.3d 1070, 1072 (8th Cir. 2004). Once personal jurisdiction is challenged, the plaintiff has the burden of making a prima facie showing of such facts. **Id.**; accord **Burlington Indus., Inc. v. Maples Indus., Inc.**, 97 F.3d 1100, 1102 (8th Cir. 1996). Although "[t]he evidentiary showing required at the prima facie stage is minimal," **Johnson v. Arden**, — F.3d —, 2010 WL 3023660, *8 (8th Cir. Aug. 4, 2010) (quotations omitted), this "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto," **Dever**, 380 F.3d at 1072 (quotations omitted). When determining whether a plaintiff has made such a showing, the court must view the evidence in the light

most favorable to plaintiff and must resolve any factual conflict in the plaintiff's favor. **Digi-Tel Holdings, Inc. v. Proteq Telecomms., Ltd.**, 89 F.3d 519, 522 (8th Cir. 1996).

"A federal court in a diversity action my assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." **Dever**, 380 F.3d at 1073 (quotations omitted). In Missouri, the prima facie case to establish personal jurisdiction over a non-resident defendant requires a showing that "'(1) the cause of action arose out of an activity covered by Missouri's long-arm statute,[2] . . . and (2) the defendant had sufficient minimum contacts with Missouri to satisfy the requirements of due process.'" **Johnson**, 2010 WL 3023660, *8 (quoting Berry v. Berry (In re Marriage of Berry, 155 S.W.3d 838, 840 (Mo. Ct. App. 2005)) (footnote added). The "'ultimate objective [of Missouri's long-arm statute is] to extend the jurisdiction of the courts of [Missouri] over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States.'" **Clune v. Alimak AB**, 233 F.3d 538, 541 (8th Cir. 2000) (quoting State v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970) (en banc)). "Accordingly, Missouri courts have interpreted the statute

---

[2]Missouri's long arm statute, Mo.Rev.Stat. § 506.500, provides, in relevant part as follows:

    1.    Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1)    The transaction of any business within this state;

(2)    The making of any contract within this state;

(3)    The commission of a tortious act within this state; . . .

broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." **Id.** Thus, this Court's inquiry into whether the assertion of personal jurisdiction over Defendant satisfies Missouri's long-arm statute is coextensive with its inquiry into whether the assertion satisfies due process. See **Id.**; **Porter v. Berall**, 293 F.3d 1073, 1075 (8th Cir. 2002).

To satisfy due process, "traditional notions of fair play and substantial justice must not be offended." **Porter**, 293 F.3d at 1075 (quotations omitted); accord **Dever**, 380 F.3d at 1073; **Burlington Indus., Inc.**, 97 F.3d at 1102 . "A defendant must have warning that his activities may result in his being haled into court in a particular jurisdiction and must invoke the benefits and protections of that jurisdiction by purposefully availing himself of the privilege of conducting those activities." **Porter**, 293 F.3d at 1075. A "'random, fortuitous, or attenuated'" connection between the nonresident defendant and the plaintiff will not suffice. **First Nat'l Bank of Lewisville, Ark. v. First Nat'l Bank of Clinton, Ky.**, 258 F.3d 727, 729 (8th Cir. 2001) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).

The Eighth Circuit Court of Appeals has "set forth five factors courts must consider when determining whether there are sufficient minimum contacts to confer jurisdiction." **Johnson**, 2010 WL 3023660, *8 (citing Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir. 1965)). "These factors include: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the

convenience of the parties. The first three factors are primary factors . . . ." **Id.** "The third factor distinguishes whether the jurisdiction is specific or general." **Id.**

> Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.

**Dever**, 380 F.3d at 1073. See also **Johnson**, 2010 WL 3023660, *8 ("Specific jurisdiction over a defendant is exercised when a state asserts personal jurisdiction over a nonresident defendant that has purposefully directed [its] activities at [Missouri] residents in a suit that arises out of or relates to these activities." (quotations omitted) (alterations in original)).

A plaintiff must show more than contact by telephone or mail in order to satisfy the first two factors. **Johnson v. Woodcock**, 444 F.3d 953, 956 (8th Cir. 2006); **Porter**, 293 F.3d at 1076; **Digi-Tel Holdings**, 89 F.3d at 523. In **First Nat'l Bank**, 258 F.3d at 729, as in the instant case, the nonresident defendant had no office or other place of business in the forum state, was not registered to do business in the forum state, and did not solicit customers or accounts from residents of the forum state. The contacts with the forum state that the defendant did have were a cashier check made payable to two residents of the state and telephone calls to the forum state about the proper endorsements of the check. **Id.** The Eighth Circuit affirmed the district court's holding that there was no personal jurisdiction. **Id.** at 730. Other than the meeting in Missouri in 2001 and the cream being developed in Missouri with Missouri "know-how," Defendant's contacts with Missouri consist of correspondence and telephone calls. These are insufficient contacts for personal jurisdiction.

Plaintiff argues, however, that it has established the first two factors. Specifically, the development of the cream and the use of its expertise satisfy the "nature and quality of the contacts" requirement and the length of time over which the parties have dealt with each other satisfies the "quantity" requirement. Plaintiff's argument overlooks the genesis of its claims against Defendant – their 1993 agreement.

> In addressing the role of contracts in personal jurisdiction analysis, the Supreme Court has stated that a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 317 (1943). Thus a determination of whether the sales contract constituted a sufficient [Missouri] contact requires that [the Court] consider[s] the "real object of the business transaction." Id. It is the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479.

**Morris v. Barkbuster, Inc.**, 923 F.3d 1277, 1281 (8th Cir. 1991) (last alteration in original). The 1993 agreement was for Defendant to market, sell, and distribute the cream developed by Plaintiff using Plaintiff's drug delivery system and Defendant's Flutrimazole after obtaining the necessary approval from the EEC countries. The "contemplated future consequences" would not occur in Missouri, nor did "the parties' actual course of dealing." Moreover, Plaintiff's performance of its part of the contract in Missouri does not give Defendant warning that it might be haled into a Missouri court. Rather, the warning would be given by *Defendant's* activities. See **Porter**, 293 F.3d at 1075. The telephone calls and letters do not suffice.

Defendant's representatives did come to Missouri once.[3] This visit too is insufficient. See **Miller v. Nippon Carbon Co.**, 528 F.3d 1087, 1092 (8th Cir. 2008) (visits to forum state by nonresident defendant's representatives once or twice a year did not permit exercise of personal jurisdiction when contacts did not sufficiently relate to subject matter of suit for due process purposes); **Morris**, 923 F.3d at 1281 (similar holding when there was a total of three trips). See also **Johnson**, 2010 WL 3023660, *9 (infrequent trips to deliver subject of action were insufficient to be continuous or systematic for purposes of personal jurisdiction).

Citing **Sun World Lines, Ltd. v. March Shipping Corp.**, 585 F. Supp. 580 (E.D. Mo. 1984), Plaintiff further argues that specific jurisdiction exists under the long-arm provision of Mo. Rev. Stat. § 506.500.1(3) that a nonresident defendant subjects himself to jurisdiction in Missouri when he commits a tortious act within the state. Defendant has committed such an act, according to Plaintiff, because it set "in motion a course of action deliberately designed to move into [Missouri] in order to injure [Plaintiff's] business." **Id.** at 583-84. "This case is no longer persuasive. Under current controlling law, to prevail in gaining personal jurisdiction based on Mo.Rev.Stat. § 506.500.1(3), [Plaintiff] must show that [Defendant] had substantial contact in Missouri related to the commission of an identified tort." **Citimortg., Inc., v. First Preference Mortg. Corp.**, 2007 WL 2684272, *4 (E.D. Mo. Sept. 7, 2007). In other words, the acts of the nonresident defendant must have been "'performed for the very purpose of having their consequences felt in the forum state.'" **Johnson**, 2010 WL 3023660, *10 (quoting Dakota Indus., Inc. v. Dakota Sportswear, Inc.,

---

[3]The Court notes that Plaintiff's representatives went twice to Europe.

946 F.2d 1384, 1390-91 (8th Cir. 1991)). The acts of Defendant are to enter into an agreement with a Missouri company that wrote Defendant at its Barcelona offices, to meet with representatives of that company in Paris and again at its Barcelona offices, and to agree to do tasks that were entirely restricted to Europe or excluded the United States, Canada, and Mexico. Under these facts, Mo.Rev.Stat. § 506.500.1(3) does not extend Missouri's personal jurisdiction to Defendant. Cf. **Bell Paper Box, Inc. v. U.S. Kids, Inc.**, 22 F.3d 816, 820 (8th Cir. 1994) (finding personal specific jurisdiction when nonresident defendant's minimal contacts consisted of correspondence directed at the forum state, *performance of the contract was entirely within the forum state,* hence defendant "sought the benefits and protection" of the forum state, including its police and fire protection, and there was one physical visit to forum state).

The fourth and fifth factors also militate against the assertion of personal jurisdiction over Defendant. Although Missouri does have an interest in providing a forum to Plaintiff's corporation, there is no argument or factual allegation that Plaintiff cannot bring this cause of action in Spain. Moreover, each party will be inconvenienced by a litigating a cause of action on the side of the Atlantic ocean opposite to it. And, as noted by Defendant, if Defendant committed a tortious act, the act occurred in Spain and not in Missouri.

As further support for the assertion of personal jurisdiction over Defendant, Plaintiff cites the provision in the agreement that it is deemed to have been entered into and is to be governed by and construed under the laws of Missouri. "[A]lthough a choice-of-law provision may be considered for jurisdictional purposes as it may 'reinforc[e] (defendant's) deliberate affiliation with the forum State and the reasonable foreseeability of possible

litigation there[,]' it is insufficient in itself to confer jurisdiction." **Digi-Tel Holdings**, 89 F.3d at 523 (quoting Burger King, 471 U.S. at 482). In **Digi-Tel Holdings**, the Eighth Circuit affirmed a dismissal for lack of personal jurisdiction of a Singapore company whose only contact with Minnesota, the forum state, were letters, faxes, telephone calls, shipments of samples to Minnesota, and a Minnesota choice of law provision. **Id.** In the instant case, Defendant's only contact with Missouri are letters, telephone calls, one meeting, and a Missouri choice of law provision. These contacts, considered in the aggregate, see **Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc.**, 111 F.3d 1386, 1390 (8th Cir. 1997), are insufficient to establish personal jurisdiction. Cf. **Id.** at 1390-91 (finding personal jurisdiction when, *in addition to* choice of law clauses requiring application of Minnesota law, some relevant contract discussions had taken place in Minnesota, nonresident defendant's representatives had gone there on several occasions to negotiate contracts, defendant had made over 200 telephone calls to plaintiff, and first contract was signed in Minnesota by both parties).

For the foregoing reasons, the Court finds that it does not have personal jurisdiction over Defendant.[4] Accordingly,

**IT IS HEREBY ORDERED** that the motion to dismiss for lack of personal jurisdiction of defendant, J. Uriach & CIA, S.A., is **GRANTED**. [Doc. 28]

**IT IS FURTHER ORDERED** that the motion to dismiss for failure to state a claim is **DENIED** without prejudice. [Doc. 25]

---

[4] Finding no personal jurisdiction, the Court declines to reach Defendant's alternative, forum non conveniens argument.

An appropriate order of dismissal shall accompany this memorandum and order.

/s/Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  28th  day of September, 2010.